UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.

MAGISTRATE JUDGE
SIMONTON

## 02-21906

## CIV-LENARD

M SECURITIES AND INVESTMENTS,
INC., a Florida Corporation, d/b/a
HOWARD GARY & COMPANY,

      Plaintiff,

vs.

CALVIN B. GRIGSBY, NAPOLEON BRANDFORD, JAMES BURKE,
WILLIAM HARDEMON, MURIEL SIEBERT,
J. DONALD RICE, MURIEL SIEBERT, & CO., Inc.,
GRIGSBY, BRANDFORD & COMPANY, Inc., GRIGSBY,
BRANDFORD & POWELL, Inc., SIEBERT BRANDFORD &
SHANK Co. a/k/a SIEBERT, BRANDFORD SHANK, & CO., L.L.C.
GRIGSBY & ASSOCIATES, INC., GBR FINANCIAL PRODUCTS
COMPANY, RICE FINANCIAL PRODUCTS COMPANY, and
APEX SECURITIES, INC.

      Jointly, individually and severally,

                  Defendants.

_____/

## C O M P L A I N T

1.    Plaintiff, M. Securities and Investments, Inc., a Florida
Corporation, d/b/a HOWARD GARY & COMPANY &
Company (hereinafter " HOWARD GARY & COMPANY or
PLAINTIFF"), sues Defendants, CALVIN B. GRIGSBY,
NAPOLEON BRANDFORD, JAMES BURKE, WILLIAM
HARDEMON, MURIEL SIEBERT, J. DONALD RICE, MURIEL
SIEBERT, & COMPANY, Inc., GRIGSBY, BRANDFORD & CO.,
Inc., GRIGSBY, BRANDFORD & POWELL, Inc., SIEBERT,
BRANDFORD SHANK, & CO., L.L.C. SIEBERT, BRANDFORD
SHANK, & CO., GRIGSBY & ASSOCIATES, INC., GBR
FINANCIAL PRODUCTS COMPANY, RICE FINANCIAL
PRODUCTS COMPANY, and APEX SECURITIES, INC., jointly,
individually and severally, and alleges as follows:

Complaint

## JURISDICTION & VENUE

1. This Court has jurisdiction over this matter as it arises under the Constitution of the United States, Article 1, §9, Clause 3 and the Statues of the United States, specifically, 28 USC §d1331, §1332, §1343 et. Seq., and 18 U.S.C. 1961 et seq. Further, the amount in controversy exceeds $75,000.00, and there are numerous pendant State claims.

2. Actions, material herein, occurred in Miami-Dade County in the Southern District of Florida, including, at least, one of the "predicate acts".

## PARTIES

3. Plaintiff, M Securities Investment, Inc., d/b/a Howard Gary & Co., is a Florida Corporation whose principal place of business in Miami-Dade County.

4. Defendant, CALVIN B. GRIGSBY, (GRIGSBY) resides in, and is a citizen of the State of California, but, at all times material, hereto, maintained an office for business in Miami, Florida.

5. Defendant, NAPOLEON BRANDFORD, (BRANDFORD) resides in and is a citizen of the State of California, but, at all times material, hereto, maintained an office for business in Miami, Florida.

6. Defendant, JAMES BURKE, (BURKE) resides in Miami–Dade County, Florida and is a citizen of the State of Florida.

7. Defendant, WILLIAM HARDEMON, (HARDEMON) resides in Miami-Dade County, Florida and is a citizen of the State of Florida.

8. Defendant, MURIEL SIEBERT (SIEBERT) resides in and is a citizen of the State of New York, but, at all times material, hereto maintained an office for business in Miami, Florida.

9. Defendant, J. DONALD RICE, (RICE) resides in and is a citizen of the State of New York, on information and belief.

2

Complaint

**10.** Defendant, GRIGSBY BRANDFORD & CO., Inc., (GRIGSBY BRANDFORD) is a foreign corporation whose principal place of business is in the State of California, but, at all times material, hereto maintained an office for business in Miami, Florida.

**11.** Defendant, GRIGSBY BRANDFORD & POWELL, INC., (GRIGSBY BRANDFORD & POWELL) is a foreign corporation whose principal place of business is in the State of California but, at all times material, hereto, maintained an office for business in Miami, Florida.

**12.** Defendant, SIEBERT, BRANDFORD SHANK, & CO., is a foreign corporation whose principal place of business is in the State of New York. It interchangeably goes by the name of Defendant, SIEBERT, BRANDFORD SHANK, & CO.,L.L.C. [collectively known as( SIEBERT, BRANDFORD)]

**13.** Defendant, MURIEL SIEBERT, & COMPANY, Inc., (MURIEL SIEBERT, & CO) is a foreign corporation whose principal place of business is in the State of New York. SIEBERT, BRANDFORD SHANK, INC is listed as a division of MURIEL SIEBERT, & COMPANY, Inc.

**14.** Defendant, GRIGSBY & ASSOCIATES, INC., (GRIGSBY & ASSOC.) is a foreign corporation whose principal place of business is the State of California. It is a successor corporation to GRIGSBY BRANDFORD & CO., Inc.

**15.** Defendant, GBR FINANCIAL PRODUCTS COMPANY, (GBR) is a foreign corporation whose principal place of business is in the State of New York.

**16.** Defendant, RICE FINANCIAL PRODUCTS COMPANY (RICE FINANCIAL) is a foreign corporation whose principal place of business is New York

**17.**    Defendant, APEX SECURITIES, Inc., (APEX) is a foreign corporation whose principal place of business is in the State of Texas.

## GENERAL ALLEGATIONS UPON WHICH ALL COUNTS ARE BASED

3

Complaint

18.　Plaintiff, HOWARD GARY & COMPANY, has been active as an underwriter of Municipal Bonds in Miami-Dade County, Florida and throughout the United States.

19.　At all times material herein, the Plaintiff HOWARD GARY & COMPANY was a man highly regarded in Miami-Dade County and throughout the United States for his knowledge of Municipal Government and Finance.

20.　Plaintiff, HOWARD GARY & COMPANY is a registered securities broker dealer registered with the Securities Exchange Commission. HOWARD GARY & COMPANY, is a member of the National Association of Securities Dealers, Inc., (NASD), and The Municipal Securities Rule Making Board.

21.　As a result of the reputation of Plaintiff, HOWARD GARY & COMPANY acted as financial advisors to numerous municipalities and state agencies in the issuing of municipal and other government securities and his company was active throughout the United States in the underwriting of municipal securities on behalf of State and Local agencies.

## THE BRIBERY-EXTORTION CONSPIRATORS

22.　During the years 1996 through 1998, BURKE was a Metropolitan Dade County Commissioner, who initially "chaired" the Finance Committee of the Metro-Dade County Commission.  He was the Commissioner who controlled the greatest influence on the issuance of Municipal securities and selection of Bond Underwriters and Finance Directors. After he was chair, he remained on the Finance Committee until 1996. As such, he exerted enormous power over its chosen Financial Advisors, and the County's Bond issuances.

23.　At all times material, herein, HARDEMON was an aide, and acted as a "bagman" for BURKE who was a Metropolitan Dade County Commissioner.

24.　At all times material, herein, GRIGSBY, and BRANDFORD, were the

4

Complaint

managing Principals, and Officers and Directors of Defendant GRIGSBY, BRANDFORD, and/or GRIGSBY, BRANDFORD and POWELL, as they were alternatively known.

25. At all times material, herein, Defendant GRIGSBY, BRANDFORD, and/or GRIGSBY, BRANDFORD and POWELL, and GBR were the alter egos of each other, for all material purposes, as it pertains, to the actions taken, hereto. They will hereafter be referred to as the GRIGSBY BRANDFORD COMPANIES.

26. HOWARD GARY AND COMPANY, and the GRIGSBY BRANDFORD COMPANIES, were all competitors in the same pertinent market as financial advisors to Municipal Governments and as underwriters to State and Municipal Governments and their agencies in the issuance of "municipal bonds".

27. On or about the Summer of 1996, GRIGSBY, BURKE, HARDEMON, SHANK, and the GRIGSBY BRANFORD COMPANIES and others engineered a scheme to Bribe representatives and Officials of Metropolitan Dade County, and other municipalities, unknown at this time, to obtain "over-lucrative" bond underwriting fees and commissions.  This lucre was shared by the GRIGSBY BRANFORD COMPANIES and directly inured to the principals, GRIGSBY, BURKE, SHANK, with their knowledge of the illegal source and manner of receipt.  (known collectively, as the Bribery/Extortion Conspirators).

28. This conduct was furthered by use of the telephone, other wire, and the united sates mails.

29. In furtherance of this "scheme" to bribe government officials, and a "scheme" to extort monies from other municipal bond underwriters, the Bribery/Extortion Conspirators, approached Howard Gary for the purpose of assisting in the bribery of public officials and the extorting of monies for themselves and from HOWARD GARY & COMPANY, in connection with some pending bond underwriting transactions in which HOWARD GARY AND COMPANY was a member of the bond underwriting pool.

30. In performing this conspiracy defendants committed perjury.

Complaint

31. Rather than participate in these unlawful bribery and extortion "schemes" and Conspiracies, Howard Gary and Company's agents, and employees disclosed the attempted bribery and extortion schemes to the Federal Bureau of Investigation (FBI).

32. As a cooperating person, the Representative of HOWARD GARY AND COMPANY agreed to appear to participate in the bribery and appeared to assist in the extortion, by the Bribery/Extortion Conspirators.

33. On, or after September 3, 1996, the assistance of the representatives of HOWARD GARY & COMPANY in the undercover operation regarding, this Bribery and Extortion scheme was revealed in the media. (The reporting was grossly inaccurate, from the inception.)

34. At that juncture, the Bribery/Extortion Conspirators, realizing that their scheme would likely lead to all or some of them being indicted, hired "publicists" to poison the prospective jury pool and to attempt to destroy the credibility and the reputation of Howard Gary & Company and its agents, and employees.

35. Prior to October, 1996, pursuant to the then relevant procedures HOWARD GARY & Company's underwriting team, including Howard GARY & COMPANY individually, had been selected by Dade County (now Miami-Dade County), and the Miami-Dade Expressway Authority, among other government entities and agencies, both within and without Florida, to serve as Financial Advisor or underwriters of certain bond issues.

36. Through the actions of the Defendants, discovered by the Plaintiff, when preparing for the trial of Burke, et al, in the year 1999, it came to light that the defendants had conspired to defame PLAINTIFF to hurt his business, to Defame Plaintiff's Principals and to otherwise damage Plaintiff.

37. As a direct, proximate, and consequential result of Defendants conduct Plaintiff was damaged, in excess of $10,000,000.00 and Plaintiff continues to suffer other collateral substantial damages.

Complaint

**38.** Defendants knew that HOWARD GARY & COMPANY would be a principal witness against the Defendants' principals' unlawful conduct.

**39.** James Burke, his aide, and his co-targets, Carmen Lunetta, then Director of the SEAPORT, Calvin Grigsby, and other persons both on the Commission, and contractors who did work as agents for Miami-Dade County and whose names were mentioned, by the media, as persons who might be indicted wished to smear the PLAINTIFF, so as to damage PLAINTIFF, financially, and PLAINTIFF's credibility as retribution, for Plaintiff's cooperation, with the Government and so as to hurt the credibility of principals and employees of PLAINTIFF who might testify in support of the United States Government in future trials.

## THE CONSPIRACY TO STIGMATIZE PLAINTIFF

**40.** The GRIGSBY, RICE and SIEBERT defendants conspired to eliminate their competitor by thoroughly discrediting HOWARD GARY & COMPANY and its principals.

**41.** It was during the S.E.C. investigation, in late 1999 that PLAINTIFF became aware of Confidential SEC and Justice Department files, where it became apparent that the Defendants stood to gain, financially by disparaging PLAINTIFF, and having PLAINTIFF stigmatized, and reviled.

**42.** After numerous preliminary exclusions and suspensions, Miami-Dade County eventually passed an Ordinance prohibiting HOWARD GARY & COMPANY from participating in bond underwriting in April, 1998.

**43.** This conduct by all the Defendants, conspiring to harm PLAINTIFF continued until after the Trials against Grigsby, Burke and Hardemon in late 1999, after the Trial by the Securities and Exchange Commission, against the City of Miami, during the year 2000.

**44.** Thereafter the Bribery/Extortion Conspirators initiated a slander campaign to the effect that Howard Gary was a corrupt person individually and Howard Gary & Co. was the cause of the City of Miami's financial crisis.  This was furthered through the assistance of

7

Complaint

persons with whom BURKE had influence, including the other Defendants, herein. This was done with the intent to disparage the representatives of Howard Gary & Co., to attempt to destroy the credibility of the company, and its agents, in an anticipated courtroom procedure.

45. The above conduct rose to the level of Obstruction of Justice and Retaliation for participating as a witness, both considered Predicate Acts under 18 U.S.C. § 1961 et seq.

46. This was done with the intent to disparage Gary and Howard Gary & Co., to attempt to destroy the credibility of the company in the anticipated courtroom proceedings.

47. Those Acts commenced the last week of September 1996 and continued, unabated throughout the entirety of 2000.

48. The DEFENDANTS, in effect, intentionally convicted HOWARD GARY & COMPANY of wrongdoing when the firm had not been charged with any wrongdoing.

49. HOWARD GARY & COMPANY was suffered grave damages to its business and professional reputation in the community in which it had offered and performed services, and in terms of the huge lost income and profits.

50. This conduct was also furthered by use of the telephone, other wire, and the united sates mails. The foregoing constitutes a "predicate act" under the pertinent "racketeering" statues, both State and federal. This constitutes the second "Predicate Act".

51. In performing this conspiracy defendants committed perjury, which is a further recognized "Predicate Act".

52. Rather than participate in these unlawful bribery and extortion "schemes" and Conspiracies, Howard Gary and Company's agents, and employees disclosed the attempted bribery and extortion schemes to the Federal Bureau of Investigation (FBI).

Complaint

## THE VANISHING OF GRIGSBY-BRANDFORD, and GBR and the MIRACULOUS RE-INVENTION OF THE SIEBERT and RICE, otherwise, known as NOW YOU SEE HIM, NOW YOU DON'T

53. The specific bond transaction scheduled to close in the first week of September 1996 was to legitimately pay substantial sums and fees to HOWARD GARY AND COMPANY. Those fees were to be collected by GRIGSBY, BRANDFORD and Defendant GBR (believed to stand for an association of GRIGSBY, BRANDFORD and Defendant RICE, individually)

54. GBR in an alter ego of GRIGSBY, BRANDFORD and RICE.

55. Defendant RICE FINANCIAL is the alter ego of Defendant RICE.

56. Immediately after the funds were received, respectively by GRIGSBY, BRANDFORD and GBR, RICE and GRIGSBY had a telephonic discussion, in furtherance of the schemes to Bribe, extort, obstruct justice and retaliate against a witness, and specifically agreed NOT to pay Howard Gary and Company the true monies due to HOWARD GARY AND COMPANY, so as to damage HOWARD GARY and COMPANY, its finances, and its reputation, and even its viability.

57. The Federal Bureau of Investigation recorded this conversation.

58. The sum total of this disparagement by The GRIGSBY BRANDFORD COMPANIES to the clients and customers of PLAINTIFF was to unlawfully and tortiously interfere with the valuable customer relations that PLAINTIFF had with its customers for the gain of the GRIGSBY BRANDFORD COMPANIES, and their successors.

59. On information and belief, BRANDFORD, RICE and SHANK also individually cooperated with the government by giving statements to the federal government and acknowledged, therein their participation actively in the schemes, which damaged Plaintiff.

9

Complaint

60. It was also done in order that, the GRIGSBY BRANDFORD COMPANIES, would not have to pay hundreds of thousands of dollars that it owed to PLAINTIFF, pursuant to a revenue sharing contract, for PLAINTIFF's share of municipal bonds transactions that were then pending, and subsequently closed. The GRIGSBY-BRANDFORD defendants breached their respective contract with PLAINTIFF damaging PLAINTIFF by withholding over $600,000.00 due PLAINTIFF for completed bond transactions. The breach of the Contract precipitated substantial incidental and consequential damages.

61. RICE and GBR would not have to pay hundreds of thousands of dollars that it owed to Plaintiff, for its share of municipal bonds transactions that were then pending, and subsequently closed, whereby RICE and GBR received Plaintiff's share of the proceeds, pursuant to contract, but never paid over those monies to PLAINTIFF, after receipt. The breach of the Contract precipitated substantial incidental and consequential damages.

62. The GRIGSBY-BRANDFORD defendants and the RICE/GBR defendants had all made promises to the PLAINTIFF's that they would properly hold the monies of PLAINTIFF, under the revenue sharing agreements, and properly disburse the monies after the receipts. But for those promises, PLAINTIFF would not have entered into those agreements. PLAINTIFF relied upon those assurances to its detriment, which substantially damaged PLAINTIFF.

63. and to further avoid being responsible for subsequent damages to customers lost by PLAINTIFF to the benefit of the GRIGSBY BRANDFORD COMPANIES, those companies "pretended to cease doing business. (See Exhibit A)

64. To defraud known and anticipated creditors, specifically including PLAINTIFF, the GRIGSBY BRANDFORD COMPANIES created alter egos of each of them. RICE set up Defendants APEX as an alter ego.

65. On information, and belief GRIGSBY, BRANDFORD and SHANK met with defendant MURIEL SIEBERT, herself and proposed that she act as a "front" to transfer all the assets, its ongoing business, all of its book of

10

Complaint

business, "good will", and revenue stream of the GRIGSBY BRANDFORD COMPANIES into a newly formed entity to be known as defendant SIEBERT, BRANDFORD and SHANK, Inc.

66. On information, and belief, this was done to "make it appear "Clean" and to insulate the liabilities of the former GRIGSBY BRANDFORD COMPANIES from existing and contingent claims of creditors.

67. SIEBERT actually knew of the allegations and claims against The GRIGSBY BRANDFORD COMPANIES and their principals.  In fact, in a solicitation prepared, almost immediately after these transfers, SIEBERT BRANDFORD boasts of its lineage, attaching articles related to the pending corruption investigation of its predecessor. (See Exhibit B).

68. GRIGSBY, to shield himself, set up Defendant GRIGSBY & ASSOC., Inc. is in reality his alter ego.  This too was set up to defraud creditors.

69. Under Florida Chapter 726, and similar statutes in California, and New York such *transfers* are void, and subject the individual participants and new legal entities to the same liabilities that there predecessors in interest were liable.

70. SIEBERT BRANDFORD also acted as an alter ego of Defendant MURIEL SIEBERT & CO. It advertised offices for SIEBERT BRANDFORD, in numerous cities throughout the United States.  In fact virtually all of those offices were offices of MURIEL SIEBERT & CO., and *NOT* SIEBERT BRANDFORD. (See Miami-Dade County yellow and white page telephone book listings for MURIEL SIEBERT & CO.- There are no listings for SIEBERT BRANDFORD (EX C).

71. As a consequence of the DEFENDANTS the PLAINTIFFS have been deprived of the value of the Financial advisory and bond underwriting deals which were or would be due PLAINTIFF.

72. Those fees were attained by the GRIGSBY BRANDFORD COMPANIES, SIEBERT BRANDFORD COMPANIES, and the individual defendants and their successors and assigns and disseminated through the form of profit taking, and additionally utilized to subsidize the payments to

11

Complaint

"P.R." personnel to assist in the destruction of PLAINTIFF'S good name, and to assist in retaliating against PLAINTIFF.

73. The defendant and each of them traveled across state lines to accomplish their unlawful goals. The conduct of these defendants in conspiracy, with each other constitutes an enterprise within the meaning of 18 U.S.C. 1961, et seq.

74. The parties were an enterprise as it is defined in Florida State Law to wit: they were individuals, corporations and other business entities that acted collectively to obstruct the justice, performed the perjury, contributed to the bribery and exact the issues of public office and as such they are an enterprise within meaning of Chapter 895.02 (3).

75. Pursuant to Florida Statute 895.05, and 18 USC 1961 et seq, an injured party has the right to bring an action to cancel the charter of each of the Defendant corporations to receive all actual, special, and consequential damages in accordance with such Statutes and when a determination is made that the damage is subject to special damages and a trebling provision, in accordance with the law.

76. The defrauding of creditors is an independent tort.

77. The intentional interference with an advantageous third party business relationship is an independent tort.

78. Howard Gary & Co. has suffered grave damages to its business and professional reputations and their high standing in the community, which they have formerly enjoyed, and they have suffered huge lost incomes and profits as a direct result of the actions of the Defendants individually and severally.

79. As a direct and proximate result of these conspiracies, HOWARD GARY & COMPANY has been placed under a cloud, his businesses suffered grave damages and have otherwise been substantially damaged, far exceeding Ten Million Dollars.

80. The actions of the Defendants, all of them, were intentional acts, which

12

Complaint

give rights to the awarding of punitive damages per the court's finding of a factual basis and plaintiff's amended complaint as provided by Fla. Stat. §768.72.

81. The Plaintiff has performed all conditions proceeding to bringing this action as to otherwise excuse of same as a matter of law.

82. The Statute of Limitations, if applicable, would be stayed, due to the recent disclosure of documents, which are the basis for this suit.

83. The PLAINTIFF has retained the undersigned Counsel and promised to pay him a reasonable attorney's fee.

## COUNT I- BREACH OF CONTRACT WITH GRIGSBY-BRANDFORD

84. The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth, hereafter.

85. The GRIGSBY-BRANDFORD defendants breached their respective contract with PLAINTIFF damaging PLAINTIFF by withholding over $600,000.00 due PLAINTIFF for a completed bond transaction, in addition to all incidental and consequential damages which PLAINTIFF sustained, as a result, thereto.

## COUNT II- BREACH OF CONTRACT WITH RICE/GBR

86. The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth, hereafter.

87. The GRIGSBY-BRANDFORD defendants breached their respective contract with PLAINTIFF damaging PLAINTIFF by withholding over $600,000.00 due PLAINTIFF for a completed bond transaction, in addition to all incidental and consequential damages which PLAINTIFF sustained, as a result, thereto.

Complaint

# COUNT III-INTENTIONAL INFERENCE WITH ADVANTAGEOUS THIRD PARTY BUSINESS RELATIONSHIPS

**88.** The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth.

**89.** The Defendants and each of them intentionally interfered with the advantageous third party relationships of PLAINTIFF, for their personal and business competitive advantages.

## COUNT IV- FRAUD

**90.** The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth.

**91.** The conducts of all the Defendants constituted an unlawful civil conspiracy which constituted a Fraud on PLAINTIFF to harm PLAINTIFF.

## COUNT V- CONVERSION

**92.** The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth.

**93.** The conducts of all the Defendants constituted an unlawful civil conspiracy which wrongfully converted PLAINTIFF'S property.

## COUNT IV- UNDER F.S. 726.101, et seq. PROHIBITING FRAUDULENT TRANSFERS

**94.** The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth.

**95.** The Defendants conduct in disguising assets and transferring them violated the Florida Statutes prohibiting fraudulent transfers to defraud creditors.

14

Complaint

**96.**    The transfers should be set aside, and the "newly created entities" should be liable for all damages sustained by PLAINTIFF.

## COUNT VII-COMMERCIAL DEFAMATION

**97.** The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth.

**98.** The conduct of the Defendants constitutes Commercial Defamation.

## COUNT VIII- CONSPIRACY

**99.** The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth.

**100.**   The conducts of all the Defendants constituted an unlawful civil conspiracy to harm PLAINTIFF.

## COUNT IX- RICO 18 USC 1961 et seq

**101.**   Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth.

**102.**   The conduct of the Defendants constitutes an enterprise of the Defendants subjecting each of them to damages and other delineated remedies under the Federal RICO statutes, including, but not limited to, the cancellation of their charters, involuntary disgorgement of illicit funds and monies, and the trebling of all damages.

## COUNT X- RICO F.S. 895.05 et seq.

**103.**   The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth.

**104.**   The conduct of the Defendants constitutes an enterprise of the Defendants subjecting each of them to damages and other delineated remedies under the Florida RICO statutes, including, but not limited to, the cancellation of their charters, involuntary disgorgement of illicit funds and monies, and the trebling of all damages.

15

Complaint

## COUNT XI- CIVIL THEFT F.S. 772.104 et seq.

105.    The Plaintiff re-alleges and reavers each paragraph to all allegations Paragraph 1 through 83 with the same force and effect as if set forth.

106.    The conduct of the Defendants constitutes an enterprise of the Defendants subjecting each of them to damages and other delineated remedies under the Florida CIVIL CAUSES OF ACTION  statutes, Chap. 772, et seq. Said chapter awards attorneys fees pursuant to F.S. §772.185.

WHEREFORE, Plaintiff, M SECURITIES AND INVESTMENTS, INC., d/b/a HOWARD GARY & COMPANY, demands judgment against the Defendants CALVIN B. GRIGSBY, NAPOLEON BRANDFORD, JAMES BURKE, WILLIAM  HARDEMON, MURIEL SIEBERT,  , J. DONALD RICE, MURIEL SIEBERT, & CO., Inc., GRIGSBY, BRANDFORD & COMPANY, Inc., GRIGSBY, BRANDFORD & POWELL, Inc., SIEBERT BRANDFORD & SHANK Co. a/k/a SIEBERT, BRANDFORD SHANK, & CO., L.L.C. GRIGSBY & ASSOCIATES, INC., GBR FINANCIAL PRODUCTS COMPANY, RICE FINANCIAL PRODUCTS COMPANY, and APEX SECURITIES, INC. jointly, individually and severally for all actual damages, for an amount in excess of $10,000,000.00, actual damages, special damages, consequential damages, punitive damages, where permitted by law, exclusive of interest, costs and attorneys fees and for other relief as is just and proper.

### DEMAND FOR TRIAL BY JURY

The Plaintiff demands Trial By Jury for all issues so triable.

RICHARD J. BURTON & ASSOCIATES, P.A.
18305 Biscayne Boulevard, Suite 300
Miami, FL  33160
TEL:  (305)705-0888/FAX: (305) 935-9542

BY:_____
        Richard J. Burton, Esquire FBN 179337

16

# CITY PUBLIC SERVICE

# OF

# SAN ANTONIO, TEXAS

## Response to Request For Qualifications

### Presented By

# Siebert Brandford Shank & Co.

# January 3, 1997



EXHIBIT

*A*

**SIEBERT BRANDFORD SHANK & CO.**
3300 Oak Lawn Avenue, Suite 510
Dallas, TX 75219
(214) 522-4664
FAX (214) 522-4764


January 3, 1997


Mr. Donald S. Thomas
Secretary/Treasurer
City Public Service
P.O. Box 1771
San Antonio, TX 78296

Dear Mr. Thomas:

Siebert Brandford Shank & Co. is very pleased to submit our proposal to serve as a co-managing underwriter for City Public Service's anticipated financings.

Siebert Brandford Shank, although a recently established firm, has already hit the ground running due to the experience and capabilities of our seasoned professionals. Several large issuers have already switched Siebert Brandford Shank into positions on financing teams which were previously held by Grigsby Brandford. **Since October 1, 1996, Siebert Brandford Shank has served as sole manager for a $17 million transaction for Prince Georges County, Maryland, and a $3.5 million transaction for the City of Houston Housing Corporation No. 1, and as a co-senior manager for a $170 million transaction for the Texas Department of Housing and Community Affairs.** Additionally, during this period Siebert Brandford Shank has served as a managing underwriter for over 20 transactions, totaling over $6 billion.

Siebert Brandford Shank offers City Public Service ("CPS") a financing team of experienced and creative bankers, a sales and distribution powerhouse, and a long history of exceptional service as a provider of municipal financings to Texas issuers. We feel that it is important for CPS to select firms with professionals who have a proven track record of structuring, underwriting and aggressively marketing large and complex financings.

## Experience with CPS
Napoleon Brandford and other Siebert Brandford Shank professionals have a long history of exceptional service to CPS. We have participated in the following transactions for City Public Service:

- Series 1995, $125 million New Money (Joint Manager in winning competitive bid)
- Series 1994, $777 million Refunding Bonds (Co-manager)
- Series 1992, $700 million Refunding Bonds (Co-manager)
- Series 1991, $356 million Refunding Bonds (Co-manager)
- Series 1989 $576 million Refunding Bonds (Co-manager)

In the most recent negotiated transaction (Series 1994), our former firm, Grigsby Brandford, had liability of approximately $25 million, and our salesforce submitted $42 million in orders for bonds. This level of sales capability has been further strengthened by Siebert Brandford Shank's retail distribution network of over 80,000 accounts.

## Commitment to CPS
Siebert Brandford Shank is very interested in continuing to serve CPS as a managing underwriter. This is evidenced by our professionals' performance on past CPS transactions, and by the fact that we have submitted numerous extensive refunding and restructuring analyses regarding the upcoming financings, beginning fifteen months ago in October, 1995. Additionally, we have met with CPS finance staff members on several occasions in order to discuss these analysis and to update them on current market conditions. Our commitment to CPS has been strong since our first inclusion on the financing team in 1989, and given our firm's increased distribution capabilities and capital position, we stand ready to support CPS even more aggressively.

## Local Presence and Accessibility
With Texas public finance offices in Dallas and Houston, including a municipal salesperson in Houston who focuses on Texas issues, Siebert Brandford Shank is committed to providing the personnel and service necessary to ensure the success of the anticipated financing. Our analytical, structuring and technical services are available to CPS and its financial advisor at a moment's notice.

## Conclusion
Siebert Brandford Shank's professionals offer the kind of experience and demonstrated underwriting strength the City will need from its underwriting team. Our professionals' experience in senior management of complex financings, together with past performance for Texas issuers and CPS, demonstrates Siebert Brandford Shank's exceptional sales and distribution capabilities.

We look forward to the opportunity to continue to demonstrate our capabilities to City Public Service. Please do not hesitate to call us if you have any question or comments.

Sincerely,
SIEBERT BRANDFORD SHANK & CO.

Napoleon Brandford, III
Chairman

Kempton Ingersol
Vice President

*A.     Name, address and phone number of the responding office of the firm.*

Contact:
Kempton M. Ingersol
Vice President
Siebert Brandford Shank & Co.
3300 Oak Lawn Avenue, Suite 510
Dallas, TX 75219
Phone:  (214) 522-4664
Fax:     (214) 522-4764

*B.     Brief history of the firm, including date of incorporation, location of headquarters and other public finance offices and number of employees. Any local offices should be indicated.*

## Firm Description

Siebert Brandford Shank & Co. is a full service investment banking firm, providing investment banking and financial advisory services to various units of state and local governments throughout the nation.   Although the firm was recently established in October 1996, its professionals have extensive experience in the municipal bond industry.  Siebert Brandford Shank's principals are Napoleon Brandford and Suzanne Shank, formerly the Chairman and President & CEO, respectively, of Grigsby Brandford & Co., Inc.  In October, they resigned from Grigsby Brandford & Co., Inc., and joined Muriel Siebert & Co., Inc. to form Siebert Brandford Shank & Co.  Thirty-five former Grigsby Brandford employees joined the new firm, including virtually all of the municipal salesforce and public finance bankers.  Including the firm's fifty-five retail brokers, there are ninety total employees. Through our San Francisco public finance headquarters and thirteen regional offices (Dallas, Houston, New York, Chicago, Detroit, Los Angeles, Seattle, Beverly Hills, West Palm Beach, Boca Raton, Naples (FL), Bal Harbor, and Morristown (NJ)), the bankers at Siebert Brandford Shank have arranged funding in the primary municipal market for over $450 billion in bond issues since 1985.   Siebert Brandford Shank's sales, trading, and underwriting department provides both institutional and retail distribution and secondary market trading performance unmatched by other regional firms.

## Regional Firm (with National Prominence)

Siebert Brandford Shank can be classified as a national, regional, minority-owned or woman-owned  firm but considers itself best described as a regional firm that serves a fast-growing and sophisticated national clientele.  Siebert Brandford Shank's size and capital structure compares favorably with many of the prominent regional investment banking firms throughout the nation. Unlike many regional firms however, our presence extends beyond one area.  Our offices are strategically placed in most of the top urban areas throughout the nation.  Our bankers have participated as senior managing underwriter in many large, complex financings nationwide. Accordingly, our knowledge base from both a banking and underwriting perspective has grown

exponentially. Siebert Brandford Shank uses this nationally acquired expertise to add value for all issuers we serve.

## Texas Presence

Napoleon Brandford, the manager of the Texas region, has been involved in municipal finance in Texas since 1987, when he was able to get Grigsby Brandford selected as part of a Dallas-Fort Worth International Airport financing. This was the first time that the airport had ever used a minority owned firm in one of its financings. When Mr. Brandford opened Grigsby Brandford's Dallas office in 1988, the firm became the only national minority owned firm with an office anywhere in Texas. Our Dallas office is headed by Kempton Ingersol, Vice President, and has two employees. Anderson Bynam, Vice President, heads our Houston office and has been involved in public finance in Texas since 1989. Our Houston office has three Siebert Brandford Shank employees, including one municipal salesperson who focuses on Texas issues.

## Ownership Structure

Siebert Brandford Shank is 51% African-American owned (equally by Napoleon Brandford and Suzanne Shank), and 49% owned by Muriel Siebert. Accordingly, the firm is also 74.5% woman owned. We believe that this is a unique situation, and that no other firm in this business with over $11.6 million in capitalization can claim this type of ownership structure.

*C.        Resumes, including phone numbers and addresses, of principal contacts of the firm, including a description of their proposed role on the financing team.*

## The Public Finance Group

Public Finance is the cornerstone of Siebert Brandford Shank's investment banking services. The Public Finance Department includes investment bankers with a variety of technical and professional backgrounds, including securities law, accounting, finance, consulting and public sector administration and management. These bankers are grouped into specialty areas, providing investment banking and financial advisory services to specific client market segments.

The firm's marketing and business strategies are unique in many respects due to the experience of the firm's professional staff in the management of tax-exempt and taxable bond financings. Our banking personnel are veterans in their respective areas, many having worked for several years for other major Wall Street firms before joining Siebert Brandford Shank. Hiring experienced industry professionals is part of our on-going strategy to increase the depth of our investment banking team. Nevertheless, while we have assembled a team of professionals highly respected in the business, we have also recruited talented young people to build for the future and maintain the ability to add value for our clients.

**Proposal to San Antonio City Public Service**                    January 3, 1997

# Siebert Brandford Shank & Co.
# Organizational Chart



Siebert Brandford Shank has assembled a financing team of experienced and creative bankers dedicated to providing CPS with unparalleled focus and service in attaining the lowest possible cost for its upcoming financings. Our financing team has significant experience in transactions for utility and public power issuers.

As Chairman and manager of the Texas region, Napoleon Brandford has overall responsibility for all accounts in the State of Texas. Since his first transaction in Texas in 1987, Mr. Brandford has continued to focus on Texas financings. Kempton Ingersol and Anderson Bynam, vice presidents in our Dallas and Houston offices, respectively, will share day-to-day banker responsibilities for CPS. Our quantitative staff will continue to work closely with these individuals on a daily basis.

The experience of Siebert Brandford Shank's finance team would benefit CPS in numerous ways. Mr. Brandford, Ingersol and Bynam all have extensive underwriting experience with large Texas issuers, and with the City of San Antonio. Most importantly, this financing team has been largely responsible for, and therefore brings an extensive knowledge of innovations developed to address the concerns of Siebert Brandford Shank's clients. The constant communication within our public finance department between the professionals in different regions and specialty groups provides for an efficient exchange of knowledge and ideas, and we look forward to the opportunity to utilize Siebert Brandford Shank's resources to ultimately benefit CPS' anticipated financings. Please see the chart on the following page for our financing team's experience and a selected listing of our clients.

**Proposal to San Antonio City Public Service**                                      **January 3, 1997**



# Finance Team Organization

**Napoleon Brandford, III**
Chairman
Project Coordinator
18 years experience

Clients Include: City of San Antonio,
City of Austin, Texas Public Finance
Authority.

**Anderson Bynam**
Vice President
Co-day-to-day Banker
7 years experience

Clients Include: City of San Antonio
(Convention Center), City of Houston,
Texas Southern University

**Kempton Ingersol**
Vice President
Co-day-to-day Banker
5 years experience

Clients Include: City of San Antonio,
(Aviation Department), TU Electric,
San Antonio River Authority

**David Thomson**
First Vice President
Quantitative Analysis
14 years experience

Clients Include: San Francisco
Public Utilities Commission,
Intermountain Power Agency

**Peter Wong**
Senior Vice President
Credit Specialist
16 years experience

Clients Include: San Francisco
Public Utilities Commission ,
California State Public Works

**Sherman Swanson**
Senior Vice President
Director, Municipal Sales
11 years experience

Sales Experience:  San Antonio CPS
(Series 1992, 1994)
San Francisco Public Utilities
Commission, DFW Int'l Airport

**Dennis MacMullan**
Senior Vice President
Director, Texas Municipal Sales
22 years experience

Sales Experience: Cities of San Antonio,
Houston, Austin, Dallas, Fort Worth,
TU Electric

**NAPOLEON BRANDFORD, III,** *Chairman*                         *San Francisco Office*
*18 years experience*

As Chairman and manager of the Texas region, Napoleon Brandford has overall responsibility for all accounts in the State of Texas.  Mr. Brandford also maintains an active ongoing list of clients outside of the State of Texas which includes the cities of Los Angeles, Chicago, Phoenix, and Oakland, and numerous other states including Oregon, California and Washington. Mr. Brandford has significant public finance experience as both a public sector employee and an investment banker.  He served as Deputy Finance Director of Dade County, Florida, from 1978 to 1982.

Mr. Brandford has served as project manager on numerous major financings including a $504 million refunding for the Los Angeles Convention and Exhibition Center Authority, a $300 million transaction for the Texas Public Finance Authority and several issues for various

**Proposal to San Antonio City Public Service**                              **January 3, 1997**

universities in the state of California.  Mr. Brandford worked with Shearson Lehman Brothers Public Finance Division in San Francisco for three years prior to joining the firm and was involved in numerous infrastructure and private activity financings, including single-family housing, multi-family housing, industrial development bonds, variable rate demand notes, certificates of participation, and tax increment financings.

Mr. Brandford is an graduate of the University of Southern California where he received a Master's Degree in Public Administration with a specialization in Administration of Local Government, and Purdue University where he received a Bachelor of Arts Degree.

**ANDERSON E. BYNAM,** *Vice President*                                    *Houston Office*
*7 years experience*

Mr. Bynam is the lead banker for our clients in the Greater Houston area, including the City of Houston, Harris County, Fort Bend County, Houston Housing Finance Corporation and North Forest ISD.  Mr. Bynam is currently coordinating our firm's efforts on an upcoming $345 million water and sewer transaction for the City of Houston.  Mr. Bynam was the co-lead banker on a $21 million refunding/ new money issue for Texas Southern University, an $18 million refunding for Hinds County, Mississippi, and is currently serving in a similar capacity for the Housing Authority of the City of Houston.  Mr. Bynam also has provided support for other senior managed issues including transactions for the Texas Veterans' Land Board, the Texas Public Finance Authority, and the Texas Turnpike Authority.  Mr. Bynam's other clients include the City of Jackson, Mississippi, the State of Nevada, the City of San Antonio, Clark County, Nevada, and the Texas Department of Housing.

From 1989 to 1992, Mr. Bynam  worked at Fulbright & Jaworski in their Public Finance and Administrative Law Department.  While at Fulbright, Mr. Bynam worked on a variety of financings as bond counsel, underwriter's counsel, and issuer's counsel for a broad range of issuers, including cities, counties, municipal utility districts, school districts, housing authorities, higher education authorities, and health facilities development corporations. Mr. Bynam is a member of the State Bar of Texas.

Mr. Bynam holds an A.B. in Politics from Princeton University and a J.D. from Northwestern University School of Law.

**KEMPTON M. INGERSOL,** *Vice President*                                  *Dallas Office*
*5 years experience*

Mr. Ingersol is the lead banker for our Dallas area clients including TU Electric, DFW Airport and the Dallas Independent School District.  Mr. Ingersol also has primary responsibility for the San Antonio River Authority, the City of Austin and the University of Texas System, among others.  Additionally, Mr. Ingersol is responsible for providing technical and administrative support for Siebert Brandford Shank financings.  Mr. Ingersol has provided the primary technical analysis for senior managed transactions for the Dallas-Fort Worth International

---

Siebert Brandford Shank & Co.                                                        5

Airport ($182 million),Texas Public Finance Authority ($300 million), the Texas Turnpike Authority ($26.8 million), and the Texas Veterans Land Board ($35 million).

Mr. Ingersol began his career in municipal finance as an analyst at Lehman Brothers, where he was responsible for technical analysis for several New York State Medical Care Facilities Finance Agency transactions. More recently, Mr. Ingersol was an Associate at M. R. Beal & Company, where he provided analytical and structuring support for many transactions, including refundings by the State of Wisconsin and Montclair Township, NJ, and for a multi-family issue by the Michigan State Housing Development Authority. Mr. Ingersol is a graduate of Amherst College in Massachusetts, and has an MBA in Finance from the University of Michigan.

**DAVID THOMSON,** *Senior Vice President*                                        *Seattle Office*
*14 years experience*

Mr. Thomson heads our refunding and quantitative analysis departments. Prior to joining Siebert Brandford Shank Mr. Thomson headed the refunding and quantitative analysis department for Grigsby Brandford & Co., Inc. Before joining Grigsby Brandford in 1989, Mr. Thomson spent six years with Smith Barney's Public Finance Division in San Francisco and Seattle. His substantial experience includes serving as lead banker for various financings for the Intermountain Power Agency. Additionally, Mr. Thomson lead managed creative refunding for the City of Tacoma, Washington Sewer Revenue Refunding Bonds, Series 1994B. This $42.5 million transaction was priced in October 1994 at very aggressive yields to provide the City with maximum net present value savings. Furthermore, the City expressed a very strong desire to sell bonds to their service area rate payers. As a result we designed a unique three-part financing strategy which included: (i) $4 million in mini-bonds (Series 1994A), sold directly by the City to its customers, (ii) a Tacoma investor-retail priority during the Series B order period to provide guaranteed access to bonds for rate payers and (iii) a local Tacoma selling group composed of firms with Tacoma sales offices to ensure as many local investors were reached as possible.

Mr. Thomson was also the architect of the firm's senior managed $107,180,000 San Francisco Public Utilities Commission water revenue refunding bonds which incorporated a sophisticated hybrid/crossover advance refunding structure. The refunding structure eliminated a "cascading" transferred proceeds penalty and substantially reduced negative arbitrage that would have occurred if the escrow was structured purely as a "conventional" advance refunding. Mr. Thomson is a graduate of Stanford University with a Bachelor of Arts degree in Economics.

**PETER WONG,** *Senior Vice President*                                        *San Francisco Office*
*14 years experience*

Mr. Wong has over fourteen years of general municipal finance experience as both a banker and credit specialist. Mr. Wong has been involved with analyzing and enhancing the credit of several Texas issuers, including the Texas Southern University Board of Regents and the Texas Veterans Land Board. Mr. Wong's recent deals include the following issuers such as California State Public Works, Sacramento City Finance Authority, and the City of St. Louis.

Previously, Mr. Wong was an Assistant Vice President at MBIA, specializing in the approval of secondary market bond credits for inclusion in the Nuveen bond funds. Before joining MBIA, Mr. Wong worked as a sell-side analyst with Gabriele, Hieglin & Cashman in New York. As a credit analyst, Mr. Wong has followed and traced numerous state and local housing bond issues, specifically with regards to prepayment experience of major housing issues, delinquency and default rates, and performed standard asset-liability ratio analyses prior to accepting credits for either purchase recommendation or approval for inclusion in insured bond funds. Mr. Wong was also a senior underwriting analyst at Capital Guaranty Insurance Company specializing in project financed credits.

Mr. Wong is a graduate of the University of California at Santa Cruz and has an MBA from Columbia University. He is a Chartered Financial Analyst, and a member of the New York Society of Security Analysts and the California Municipal Analysts Society.

| UNDERWRITING, SALES AND TRADING |
| --- |

**SHERMAN SWANSON,** *Senior Vice President*                    *San Francisco Office*
*11 years experience*

Mr. Swanson is head of Siebert Brandford Shank's underwriting efforts. Prior to serving as head of the underwriting desk for Grigsby Brandford, Mr. Swanson worked for Kemper Securities Inc. where he coordinated the firm's California underwriting and trading activities. Mr. Swanson began his municipal bond career in 1984 with E. F. Hutton and later with Shearson Lehman Hutton. Mr. Swanson has run the books on a number of large municipal underwritings, including $500 million for the Los Angeles Convention Center, $214 million for the City of New York, $225 million for the City of Sacramento, $300 million for the Texas Public Finance Authority (which included an eighteen member syndicate), and $182 million for the Dallas-Fort Worth International Airport. Mr. Swanson is a graduate of Brown University.

**DENNIS MACMULLAN,** *Senior Vice President*                    *Houston Office*
*22 years experience*

Mr. MacMullan is a former employee of Masterson, Moreland, Sauer & Whisman, Inc. where he developed several new accounts in addition to working with existing investors. Prior to this engagement, Mr. MacMullan broadened his account base of funds, insurance companies and trust departments at Underwood, Neuhaus, Inc. in Houston. Prior to this experience, Mr. MacMullan was involved in municipal sales at American Securities in New York, and at Manufacturers Hanover Trust.

Mr. MacMullan's recent experience includes financings for the Texas Public Finance Authority, the Texas Veterans' Land Board, the City of San Antonio, and Austin Independent School District, among others. Mr. MacMullan is a graduate of Queens College.

**Proposal to San Antonio City Public Service**       **January 3, 1997**

During the past three years, the professionals at Siebert Brandford Shank have participated as a managing underwriter in 467 transactions nationwide, totaling over $73 billion. Please see Exhibit 1 for a complete list of these transactions.

References

> *Texas Public Finance Authority*
> *$300,000,000*
> *General Obligation Refunding*

The bankers and sales and trading professionals at Siebert Brandford Shank (while at Grigsby Brandford) served as bookrunning senior manager for the Texas Public Finance Authority's $300,000,000 General Obligation Refunding 1995A Bonds Series 1995A, in February of 1995. The 1995A bonds represented one of the largest refunding transactions completed in the municipal market in 1995 and certainly one of the most technically creative refundings. Despite other refundings in the twelve months prior to this transaction suffering negative escrow arbitrage, we were able to take advantage of a rapid and unprecedented flattening of the taxable yield curve to earn positive arbitrage (which under current tax law the Authority was allowed to keep). Because the refunding proceeds were used to refund a portion of the Authority's commercial paper program on a "current" basis, the escrow period could not exceed 90 days. However, since the 90-day current refunding escrow was considered a "temporary period" under tax law no rebate was required to the U.S. Treasury if, in fact an issuer could invest at a short-term taxable rate in excess of its long-term tax-exempt borrowing rate. This technique allowed the Authority to earn and keep an unprecedented $850,000 in positive legal arbitrage by investing for 90 days at a yield which exceeded both the all-in yield on the 1995A Bonds and the yield on the commercial paper notes being refunded. On the pricing date our firm stepped up and secured priority orders totaling over $300 million for the transaction at the original consensus pricing scale. As the market firmed up during the day, we were able to reprice almost all of the maturities lower in yield by 5 basis points and produce a final TIC of 5.87%. Our firm sold over $192 million of the bonds on a "going away" basis.

In order to successfully complete this high profile transaction, our bankers demonstrated impressive technical capabilities, substantial distribution capabilities and the ability to respond quickly to changes in the municipal marketplace. The Authority and its financial advisors were pleased with our performance. We consider client satisfaction as the ultimate test of a firm's ability to perform.

*Contact Person*

Cheryl Creuzot
Board Member
Texas Public Finance Authority
300 West 15th Street, Suite 411
P.O. Box 12906
Austin, TX 78711-2047
(512) 463-5544

**Proposal to San Antonio City Public Service**                          **January 3, 1997**

**Office Addresses:**

**Dallas Office**
3300 Oak Lawn Avenue, Suite 510
Dallas, TX 75219
Phone:  (214) 522-4664
Fax:     (214) 522-4764

**Houston Office**
601 Jefferson, Suite 320
Houston, TX 77002
Phone:  (713) 659-7964
Fax:  (713) 658-8113

**San Francisco Office**
220 Sansome Street, 15th Floor
San Francisco, CA 94104
Phone:  (415) 439-4450
Fax:     (415) 439-4480

**Seattle Office**
601 Union Street, Suite 3000
Seattle, WA 98101
Phone:  (206) 621-8903
Fax:     (206) 382-6640

*D.*     *Information concerning the firm's distribution capabilities, including a list of transactions the firm has been involved with as an underwriter during the last three years. A list of three references from this transaction list that can be contacted, including name, title, address and phone numbers, should be part of this response.*

## Distribution Capabilities

Our sales and trading efforts are coordinated through our Municipal Sales & Trading Headquarters located in San Francisco.  Nationally, Siebert Brandford Shank employs seventy-one registered sales personnel who sell municipal bonds to institutions and to our over 80,000 retail accounts. Our Texas Municipal Trading Department located in Houston contains one registered account executive who actively sells municipal bonds.



**Siebert Brandford Shank & Co.**
**Offices Nationwide**

★ Regional Office
☆ Municipal Trading Headquarters
★ Equity Trading Headquarters

**Proposal to San Antonio City Public Service**                      **January 3, 1997**

Although many would consider Siebert Brandford Shank a regional firm, our firm possesses a vast, dynamic distribution network that rivals any firm on Wall Street.  As a full service investment bank, our broad sales and distribution network allows us to provide unique access to the market that is consistently superior in generating a broad range of orders for our national clients by accessing large institutions, second and third-tier institutional buyers, and a host of retail accounts. Our paramount goal is to get the lowest interest rates for our issuers; without a superior sales and trading department this would be an impossible task.   Our clients have seen that Siebert Brandford Shank's sales force consistently has been able to lower their overall interest costs through our expansive market access.

In addition to covering all of the large institutional investors, Siebert Brandford Shank's sales and trading effort has focused much energy in cultivating and servicing second-tier and third-tier institutional buyers and other smaller institutions that are often under-serviced by the big New York firms because these mid-size institutional buyers do not have the same buying power as the large bond funds and insurance companies.  When the major firms run into market resistance on tough-to-sell issues, our firm can rely on our second-tier and third-tier buyers who will "step up" because they have been well serviced by Siebert Brandford Shank sales professionals in past transactions.



\* Bonds sold for benefit of the group

---

**Siebert Brandford Shank & Co.**                                                                 9

**Proposal to San Antonio City Public Service**                    January 3, 1997

---

> ### *Texas Turnpike Authority*
> ### *$26,800,000 Dallas North Tollway Revenue Bonds*

In November, 1994 our bankers served as senior manager for a $26,800,000 financing of Texas Turnpike Authority (Dallas North Tollway) Revenue Bonds. This financing provided funds to finance the construction of the Addison Airport Toll Tunnel, which is expected to significantly improve the flow of traffic around the Airport.

While the bonds were sold in a volatile market, due to the extensive premarketing program coordinated by our underwriting desk and undertaken by the entire syndicate, we were able to price the bonds very aggressively and complete allocations before 2pm PST on the day of pricing. In fact, the term bond in this transaction was priced 5 basis points below a similar term in a general obligation issue from a similarly rated Texas issuer which was priced on the same day.

On the day of pricing, we worked closely with each co-manager in recording their order activity, and we were able to distribute allocations prior to the market's close on the day of pricing. Given the volatile market into which these bonds were sold and the high percentage of member orders, the rapidity of confirming orders to syndicate members was critical to their ability to maintain and confirm orders from their buyers and minimize the risk that market movement would obviate their clients' interest in the bonds, thus leaving those firms with large unsold balances and unnecessary capital risk.

While this transaction was unique in a number of ways, it was nevertheless very similar to several other our firm senior managed transactions. It serves to illustrate Siebert Brandford Shank's commitment as a senior manager to encouraging full participation from all syndicate members, while simultaneously achieving the lowest interest cost for the issuer.

Please see following chart which shows the rates our sales and trading staff achieved were 10 basis lower in several maturities versus comparable, similarly rated transaction priced on the same day.

*Contact Person*

James Griffin
Executive Director
Texas Turnpike Authority
3015 Raleigh Street
P.O. Box 190369
Dallas , TX 75219
(214) 522-6200

---

**Siebert Brandford Shank & Co.**                                     11

Proposal to San Antonio City Public Service                    **January 3, 1997**

---

> **Texas Veterans' Land Board**
> **$35,000,000 Interest Rate Swap**

In May 1994, our bankers, while at Grigsby Brandford, served as senior manager for a $35 million general obligation financing and, along with a derivative provider structured and executed on behalf of the Texas Veterans' Land Board ("TVLB") an extremely innovative interest rate swap.

The Board's interest rate swap was the final step in a complex financing that funded a pool of moneys to provide Texas veterans with low cost mortgages. As such, the TVLB pool faced a negative arbitrage challenge very similar to the Board's SRF pool challenge. This innovative structure substantially reduced the cost and risk associated with providing loans to the State's veterans in today's volatile interest rate market. It allowed TVLB to lock in very attractive long term rates over the life of the bonds, but still take advantage of the lower variable rates during the period that loans were being originated.

Under the interest rate swap agreement, TVLB receives a fixed rate from the derivative provider in return for which it makes variable rate payments back to the provider. The fixed rate payments that TVLB receives are used to offset its fixed rate payments on its bonds and, as a result, TVLB's net cost of funds is on a variable rate basis. This initially results in a substantial reduction in interest costs. The transaction also serves as a hedge against rising rates, because if interest rates increase over the life of the swap, this rise will be offset by increased investment earnings, fueled by the market interest rate increases. The swap lasted for two years, concurrent with the term of the loan origination period. After that, TVLB's cost of money returned to its low long-term fixed bond rate. Over the two year period, net of all associated costs, this interest rate swap saved the TVLB over $510,000.

*Contact Person*

Rusty Martin
Director of Funds Management
Texas Veterans Land Board
1700 N. Congress
Austin TX 78701
(512) 463-5198

*E.      Information concerning the firm's status as an MBE/WBE firm.*

Siebert Brandford Shank is a recently established firm (October, 1996), and is in the process of becoming certified as an MBE/WBE firm in several states and localities, including the State of Texas. As mentioned previously, the firm is 51 % minority-owned (25.5% each by Napoleon Brandford and Suzanne Shank, both African-Americans), and 49% owned by Muriel Siebert. Therefore, the firm is also a 74.5% woman-owned firm (by Ms. Siebert's and Ms. Shank's ownership interests).

---

**Siebert Brandford Shank & Co.**                                          **12**

F.     *Any limit on liability the firm may wish to self-impose or that is imposed by NASD capital requirements. Net capital for underwriting purposes as of the last reporting date should be indicated.*

Siebert Brandford Shank's limit on underwriting liability as a co-manager on the anticipated financing would be $75 million.

# Siebert Brandford Shank & Co.
# Capital Position

Except for the $250,000 required for the Discount Brokerage Division, all of the firm's capital is available for commitment to its Capital Markets Division, of which municipal underwriting represents the major portion. Provided below is a summary of the firm's capital position for the period December 31, 1993 through September 30, 1996.



| Year Ending | 12/31/93 | 12/31/94 | 12/31/95 | 9/30/96 |
|---|---|---|---|---|
| Total Capital | $5,335,287 | $5,892,457 | $9,415,641 | $11,890,189 |
| Equity Capital | $3,335,287 | $3,892,457 | $5,137,130 | $9,390,189 |
| Excess Net Capital | $3,349,331 | $4,215,314 | $4,515,309 | $10,044,872 |

Please see Exhibit 2 for our most recent audited financial statements and focus report.

Proposal to San Antonio City Public Service                    January 3, 1997

---

**G.    *Any other information that would assist in the selection process.***

## Experience with CPS

Napoleon Brandford and other Siebert Brandford Shank professionals have a long history of exceptional service to CPS. We have participated in the following transactions for City Public Service:

- Series 1995, $125 million New Money  (Joint Manager in winning  competitive bid)
- Series 1994, $777 million Refunding Bonds (Co-manager)
- Series 1992, $700 million Refunding Bonds (Co-manager)
- Series 1991, $356 million Refunding Bonds (Co-manager)
- Series 1989 $576 million Refunding Bonds (Co-manager)

In the most recent negotiated transaction (Series 1994), our former firm, Grigsby Brandford, had liability of approximately $25 million, and our salesforce submitted $42 million in orders for bonds. This level of sales capability has been further strengthened by Siebert Brandford Shank's retail distribution network of over 80,000 accounts.

## Commitment to CPS

Siebert Brandford Shank is very interested in continuing to serve CPS as a managing underwriter. This is evidenced by our professionals' performance on past CPS transactions, and by the fact that we have submitted numerous extensive refunding and restructuring analyses regarding the upcoming financings, beginning fifteen months ago in October, 1995. Additionally, we have met with CPS finance staff members on several occasions in order to discuss these analysis and to update them on current market conditions. Our commitment to CPS has been strong since our first inclusion on the financing team in 1989, and given our firm's increased distribution capabilities and capital position, we stand ready to support CPS even more aggressively.

---

# THE BOND BUYER

––––––––– THE DAILY NEWSPAPER OF MUNICIPAL FINANCE –––––––––

Vol. 317 No. 30010              Thursday, October 24, 1996              New York, N.Y.

## New Siebert Division Hires 35 Staffers From Former Grigsby Brandford & Co.

*By Niamh Ring*

The new Muriel Siebert & Co. subsidiary Siebert, Brandford, Shank & Co. has picked up 35 municipal professionals in the past month from the firm that had been known as Grigsby Brandford & Co.

The 22 bankers and 17 sales and trading professionals—who have followed former Grigsby partners Napoleon Brandford 3d and Suzanne Shank to the new firm—account for the bulk of Grigsby's muni division. And the new firm plans to hire "several" more institutional salespeople in New York, California, and Texas to aid its distribution efforts, said Brandford, who chairs the new entity.

Siebert Brandford was formed earlier this month when Brandford and Shank quit Grigsby Brandford to join New York-based Muriel Siebert. Their move came in the wake of the sudden resignation of chairman Calvin Grigsby, who has since hung a new shingle, a firm called Grigsby & Associates.

Grigsby's departure from the old firm coincided with reports that the Federal Bureau of Investigation was looking into alleged political corruption and bribes associated with a $183 million bond issue for Dade County, Fla. The firm had served as senior underwriter on the issue. Grigsby has since hired famed O.J. Simpson defense attorney Johnnie L. Cochran to represent him.

Calvin Grigsby has injected capital into Grigsby & Associates since his partners' departure, bringing the firm's current capitalization to $4.7 million, said Bob Ceresa, who heads New York sales efforts for the firm. There are currently four bankers and five salespeople spread between San Francisco, Los Angeles, New York, and Miami.

However, Sherman Swanson, who headed underwriting and trading for Grigsby Brandford, is not one of them. Swanson is one of the 35 who has joined Siebert, where he will fill the same role, Brandford said.



*File photo*

GB Derivatives Products Co. remains under the Grigsby mantle under Don Rice Jr., who heads a staff of four, Ceresa said.

As of Tuesday, Grigsby & Associates had not petitioned the National Association of Securities Dealers or the Securities and Exchange Commission to change its name from Grigsby Brandford, according to spokespersons at both agencies.

Ceresa referred questions regarding the name change to Grigsby, who did not return calls by press time. Meanwhile, Brandford noted that bringing over the bulk of Grigsby's municipal group has helped the new Siebert subsidiary establish credibility with the issuer community.

To complement that, Brandford said: "We have an additional retail network that we didn't have before, and the capital of the new firm is three times as big as the old firm." Grigsby Brandford's capital was approximately $3 million. Brandford said, adding that he and Shank have liquidated their capital from that firm.

Siebert Brandford has already been involved in underwriting several municipal bond issues.

'**We have 80,000 retail accounts that we want to feed some bonds to,' says Siebert CEO Muriel F. Siebert.**

On Tuesday the firm solely managed a $17.4 million certificate of participation issue for Prince George's County, Md.—the firm's first chance as a senior manager.

Yesterday the firm was a co-senior manager on a $169.4 million single-family mortgage revenue bond issue for the Texas Department of Housing and Community Affairs. Bear, Stearns & Co. ran the books on the deal. The firm will also be part of the syndicate for another Bear Stearns-managed issue: a $211 million deal from Chicago for O'Hare International Airport, which is due to enter the market today.

Muriel Siebert currently has offices in San Francisco, Los Angeles, Seattle, Chicago, Detroit, Dallas, Houston, New York, and Boca Raton and Naples, Fla.

Referring to the alliance, Muriel F. Siebert, chief executive officer of the firm that bears her name, said: "This will make a lot of sense for us. We have 80,000 retail accounts that we want to feed some bonds to."

The firm is also set to open offices in Bal Harbor and West Palm Beach, Fla.; in Morristown, N.J.; and in Beverly Hills, Calif., she said.

Siebert Brandford hopes to eventually establish a municipal presence in all of these offices. Siebert added. Right now, however, Brandford noted that the highest priority is being given to the San Francisco, Seattle, Houston, Dallas, and Chicago locations.

*Article reprinted by permission from the "Bond Buyer."*

OFFICIAL STATEMENT DATED OCTOBER 22, 1996

NEW ISSUE — Book-Entry Only

Fitch: "AAA"
Standard & Poor's: "AAA"
(See "RATINGS.")

*In the opinion of Co-Bond Counsel, under existing law and subject to the conditions described in the Section herein "TAX EXEMP-TIONS," the interest component of Purchase Installments distributed as interest, including accrued original issue discount, on the Series 1996A Certificates (i) will not be included in gross income for Federal income tax purposes, (ii) will not be an item of tax preference for purposes of the Federal alternative minimum income tax imposed on individuals and corporations, and (iii) will be exempt from any income taxation by the State of Maryland, or by any of its political subdivisions, municipal corporations, or public agencies, but no opinion is expressed as to Maryland estate, inheritance or franchise taxes. Such interest, including accrued original issue discount, may be included in the calculation of a corporation's alternative minimum income tax, and a holder may be subject to other Federal tax consequences as described in the Section herein "TAX EXEMPTIONS."*



$17,300,000
**PRINCE GEORGE'S COUNTY, MARYLAND**
**CERTIFICATES OF PARTICIPATION**
**(EQUIPMENT ACQUISITION PROGRAM) SERIES 1996A**



Evidencing Undivided Proportionate Interests in the Conditional Purchase Agreement Described Below

Dated: October 15, 1996                                    Due: October 15, as shown below

The Series 1996A Certificates are being issued pursuant to a Certificate of Participation Trust Indenture (the "Trust Indenture") between Prince George's County, Maryland (the "County") and First Union National Bank of Maryland, with its corporate trust offices in Richmond, Virginia, as trustee (the "Trustee") dated as of October 15, 1996, and as Seller under the Purchase Agreement (defined herein). The Series 1996A Certificates are being issued to provide funds to finance the acquisition of certain equipment and to pay the costs of issuance of the Series 1996A Certificates. The Series 1996A Certificates represent undivided proportionate interests in a Conditional Purchase Agreement (the "Purchase Agreement") between the County, as purchaser (the "Purchaser"), and First Union National Bank of Maryland, as seller (the "Seller") dated as of October 15, 1996, and are payable solely from and secured by (i) the Purchase Installments payable by the County under the Purchase Agreement (ii) certain funds held by the Trustee under the Trust Indenture; and (iii) amounts realized pursuant to certain remedies under the Purchase Agreement and the Trust Indenture.

Payment of the principal and interest on the Series 1996A Certificates when due will be insured by a financial guaranty insurance policy to be issued contemporaneously with the issuance of the Series 1996A Certificates by

**MBIA**

The Series 1996A Certificates will be issuable in fully-registered form, and will be registered in the name of Cede & Co., as registered owner and partnership nominee for The Depository Trust Company ("DTC"), New York, New York, which will act as securities depository for the Series 1996A Certificates. Individual purchases of the Series 1996A Certificates will be issued in book-entry only form in denominations of $5,000 and integral multiples thereof. (See "THE SERIES 1996A CERTIFICATES, DTC and Book-Entry Only System.") Beneficial owners of the Series 1996A Certificates will not receive physical certificates representing their interests in the Series 1996A Certificates. The Series 1996A Certificates are issued in the original principal amount set forth below. Interest on the Series 1996A Certificates will be paid on April 15 and October 15 of each year, commencing April 15, 1997.

The Series 1996A Certificates are not subject to optional redemption prior to maturity, but are subject to extraordinary mandatory redemption prior to maturity as described herein. (See "THE SERIES 1996A CERTIFICATES, Redemption Provisions".)

**MATURITIES, AMOUNTS, INTEREST RATES, PRICES AND YIELDS**
$17,300,000 Series 1996A Serial Certificates

| Due October 15 | Amount | Interest Rate | Price | Yield |
|---|---|---|---|---|
| 1997 | $1,445,000 | 4.50% | 100.602% | 3.85% |
| 1998 | 2,930,000 | 4.10 | 99.905 | 4.15 |
| 1999 | 3,595,000 | 5.00 | 101.643 | 4.40 |
| 2000 | 4,550,000 | 5.00 | 101.429 | 4.60 |
| 2001 | 4,780,000 | 4.60 | 99.560 | 4.70 |

THE PRINCIPAL OF AND INTEREST ON THE SERIES 1996A CERTIFICATES SHALL BE PAYABLE SOLELY FROM THE PURCHASE INSTALLMENTS PAYABLE UNDER THE PURCHASE AGREEMENT AND OTHER FUNDS PLEDGED FOR THE PAYMENT THEREOF UNDER THE TRUST INDENTURE. ALL AMOUNTS PAYABLE BY THE COUNTY UNDER THE PURCHASE AGREEMENT, INCLUDING THE PURCHASE INSTALLMENTS, ARE SUBJECT IN EACH YEAR TO APPROPRIATION BY THE COUNTY COUNCIL. AND THE COUNTY COUNCIL IS UNDER NO OBLIGATION TO MAKE ANY APPROPRIATION WITH RESPECT TO THE PURCHASE AGREEMENT. AMOUNTS PAYABLE BY THE COUNTY UNDER THE PURCHASE AGREEMENT ARE NOT GENERAL OBLIGATIONS OF THE COUNTY AND SHALL NEVER CONSTITUTE AN INDEBTEDNESS OF THE COUNTY WITHIN THE MEANING OF ANY CONSTITUTIONAL OR CHARTER PROVISION OR STATUTORY LIMITATION OR A CHARGE AGAINST THE GENERAL CREDIT OR TAXING POWERS OF THE COUNTY. IF THE COUNTY FAILS TO MAKE AN APPROPRIATION UNDER THE PURCHASE AGREEMENT, THE PURCHASE AGREEMENT WILL BE TERMINATED AT THE END OF THE FISCAL YEAR FOR WHICH SUFFICIENT FUNDS SHALL HAVE BEEN APPROPRIATED FOR THE PAYMENT OF THE PURCHASE INSTALLMENTS AND OTHER AMOUNTS DUE UNDER THE PURCHASE AGREEMENT.

The Series 1996A Certificates are offered for delivery when, as and if issued and received pursuant to the Trust Indenture and subject to the approving legal opinion of Fumion & Williams, Washington, D.C., and Smallwood & Wells, P.A., Largo, Maryland, Co-Bond Counsel. Certain legal matters will be passed upon for the Underwriter by its counsel, McGuire, Woods, Battle & Boothe, L.L.P., Baltimore, Maryland. It is expected that delivery of the Series 1996A Certificates in definitive form will be made through the facilities of The Depository Trust Company in New York, New York, on or about November 1, 1996.

**SIEBERT, BRANDFORD, SHANK & CO.**
**(A Division of Muriel Siebert & Co.)**

OFFICIAL STATEMENT DATED DECEMBER 6, 1996

NEW ISSUE — BOOK ENTRY ONLY

RATINGS: Fitch Investor Service, L.P. — BBB+

In the opinion of Bond Counsel, interest on the Bonds (as defined herein) is excludable from gross income for federal income tax purposes under existing law and is not subject to the alternative minimum tax on individuals. Subject to the matters described in "TAX EXEMPTION" herein, including a description of alternative minimum tax consequences for corporations.

$3,585,000
## City of Houston Housing Corporation No. 1
## First Lien Revenue Refunding Bonds, Series 1996
### (6800 Long Drive Apartments — Section 8 New Construction Program)
### Houston, Texas

Dated: December 1, 1996

Due: February 1, as shown on the inside cover page

The City of Houston Housing Corporation No. 1 First Lien Revenue Refunding Bonds, Series 1996 (6800 Long Drive Apartments — Section 8 New Construction Program) (the "Bonds") are secured by and issued under an Indenture of Trust and Security Agreement, dated December 1, 1996 (the "Indenture"), between the City of Houston Housing Corporation No. 1 (the "Issuer"), a Texas non-profit corporation created under article 1396-1.01 et. seq., V.T.C.S., as amended, and a public facility corporation under article 717a, V.T.C.S., as amended, and Texas Commerce Bank National Association (the "Trustee") to provide funds to refund the Issuer's First Lien Revenue Bonds, Series 1979 (the "Refunded Bonds"). Under the Amended and Restated Lease Agreement (the "Lease") between the Issuer and the Housing Authority of the City of Houston, Texas (the "Authority"), all revenues (inclusive of revenues derived from the Housing Assistance Payments Contract ("HAP Contract")) of the 100-unit housing project located at 6800 Long Drive, Houston, Texas (the "Project") are pledged to the Issuer to secure payment of the Bonds as long as they are outstanding. Pursuant to the terms of the Indenture, the Issuer pledges all revenues received from the Project to the Trustee for payment of the Bonds. The revenues of the Project include all tenant rental payments, HAP Contract Payments and all other payments to the Project (collectively referred to herein as "Contract Rent") provided by the United States Department of Housing and Urban Development ("HUD") under a HAP Contract between HUD and the Authority. See "THE PROJECT RENTALS — SECTION 8 NEW CONSTRUCTION PROGRAM."

The Bonds are issued in fully registered form in denominations of $100,000, or any $5,000 integral greater than $100,000, and when issued, will be registered in the name of Cede & Co. as registered owner and nominee for The Depository Trust Company, New York, New York ("DTC"), which will act as securities depository for the Bonds. The Bonds will initially be available to purchasers only in book-entry form through the facilities of DTC. For as long as Cede & Co. is the sole registered owner of the Bonds, the principal of and interest on the Bonds will be payable by the Trustee to DTC, which will be solely responsible for making such payments to DTC Participants (as defined herein) for subsequent remittance to the Owners of beneficial interest in the Bonds. Interest on the Bonds is payable on August 1, 1997, and on each February 1 and August 1 thereafter until maturity or prior redemption.

Certain of the Bonds are subject to mandatory or optional redemption prior to maturity as set forth herein. See "REDEMPTION."

SEE INSIDE COVER PAGE FOR
MATURITY AND PRICING SCHEDULE

THE BONDS DO NOT CONSTITUTE A DEBT OR GENERAL OBLIGATION NOR A PLEDGE OF THE FAITH AND CREDIT OF THE CITY OF HOUSTON, TEXAS, THE STATE OF TEXAS, THE HOUSING AUTHORITY OF THE CITY OF HOUSTON, TEXAS OR ANY OTHER POLITICAL SUBDIVISION OF THE STATE OF TEXAS. THE BONDS CONSTITUTE LIMITED OBLIGATIONS OF THE ISSUER PAYABLE SOLELY FROM THE FUNDS AND PROPERTY OF THE ISSUER SPECIFICALLY PLEDGED TO THE PAYMENT OF THE BONDS. THE ISSUER HAS NO TAXING POWER. THIS BOND IS NOT A DEBT OF THE UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT OR ANY OTHER FEDERAL GOVERNMENTAL AGENCY, AND IS NOT GUARANTEED BY THE FULL FAITH AND CREDIT OF THE UNITED STATES OF AMERICA. See "INVESTMENT RISK CONSIDERATIONS."

The Bonds are offered for delivery, when, as and if issued, subject to the approving opinion of the Attorney General of the State of Texas and the opinion of Fulbright & Jaworski L.L.P., Houston, Texas, Bond Counsel. Certain matters will be passed upon for the Underwriter by Wickliff & Hall, P.C., Houston, Texas. The Bonds are expected to be available for delivery through the facilities of the Depository Trust Company on or about January 7, 1997.

## SIEBERT BRANDFORD SHANK, INC.
### A Division of Muriel Siebert & Co., Inc.

RATINGS:
Moody's "AAA"
S&P "Aaa"
MBIA Insured (see "Bond
Insurance" and "Ratings" herein).

*Vinson & Elkins L.L.P. and Law Office — Sherman E. Stimley & Associates, Co-Bond Counsel, are of the opinion that, subject to certain conditions described herein, (i) interest on the Series D Bonds and Series E Bonds is excludable from gross income for federal income tax purposes under existing law, (ii) interest on the Series D Bonds is an item of tax preference that is includable in alternative minimum taxable income for purposes of determining the alternative minimum tax imposed on individuals and corporations and the environmental tax imposed on corporations and (iii) interest on the Series E Bonds is not an item of tax preference that is includable in alternative minimum taxable income for purposes of determining the alternative minimum tax imposed on individuals and corporations and the environmental tax imposed on corporations See "TAX MATTERS" herein for a discussion of Co-Bond Counsel's opinion, including a description of the federal alternative minimum tax on individuals and corporations.*

NEW ISSUES — BOOK-ENTRY ONLY

# $169,490,000

# Texas Department of Housing and Community Affairs

### Single Family Mortgage Revenue Bonds
**$70,760,000 1996 Series D (AMT)**
**$98,730,000 1996 Series E (Non-AMT)**

**Interest Accrues: October 1, 1996**                    **Due: As shown on inside cover page**

The Texas Department of Housing and Community Affairs' (the "Department") $70,760,000 Single Family Mortgage Revenue Bonds, 1996 Series D (the "Series D Bonds") and $98,730,000 Single Family Mortgage Revenue Refunding Bonds, 1996 Series E (the "Series E Bonds") are issuable by the Department pursuant to that certain Trust Indenture (as defined herein) and the Series 1996 Supplemental Indentures (as defined herein), each by and between the Department and Bank One, Texas, NA, Fort Worth, Texas, as Trustee (the "Trustee"), only as fully registered bonds, without coupons, and will be registered in the name of Cede & Co., as registered owner and nominee for The Depository Trust Company, New York, New York ("DTC"). The Series D Bonds and Series E Bonds are referred to collectively herein as the "Series D/E Bonds." DTC will act as securities depository for the Series D/E Bonds. The Series D/E Bonds will be available to purchasers only in book-entry form in denominations of $5,000 or any integral multiple thereof. For as long as Cede & Co. is the exclusive registered owner of the Series D/E Bonds, the principal or redemption price of and interest on, and purchase price of, if any, the Series D/E Bonds will be payable by the Trustee, to DTC, which will be responsible for making such payments to DTC Participants (as defined herein), for subsequent remittance to the owners of beneficial interests in the Series D/E Bonds. The purchasers of the Series D/E Bonds will not receive certificates representing their beneficial ownership interest. See "THE SERIES D/E BONDS — DTC and Book-Entry."

**MBIA**   Payment of the principal of and interest on the Series D/E Bonds on stated payment dates will be insured by a Financial Guaranty Insurance Policy to be issued by MBIA Insurance Corporation concurrently with the delivery of the Series D/E Bonds. See "BOND INSURANCE" herein.

The Series D/E Bonds will accrue interest from October 1, 1996, until their respective maturities or prior redemption at the respective per annum rates of interest set forth on the inside cover page hereof. Interest on the Series D/E Bonds will be payable to DTC on March 1, 1997, and semi-annually on each September 1 and March 1 thereafter until maturity, as more fully described on the inside cover page hereof, or prior redemption.

The Series D Bonds are being issued for the primary purpose of providing funds for the purchase of mortgage-backed, pass-through certificates (the "Mortgage Certificates") backed by qualifying FHA-insured, VA-guaranteed, Rural Development-guaranteed or conventional mortgage loans ("Mortgage Loans") made to eligible borrowers for single-family residences located in the State of Texas and paying a portion of the costs of issuance of the Series D/E Bonds. The Mortgage Certificates will be guaranteed as to timely payment of principal and interest by either the Government National Mortgage Association ("GNMA") (the "GNMA Certificates") or the Federal National Mortgage Association ("FNMA") (the "FNMA Certificates"). See APPENDIX C-1 and APPENDIX C-2. The proceeds of the Series E Bonds will be deposited and applied for the primary purpose of refunding and redeeming certain Bonds (as defined herein) outstanding under the Trust Indenture (the "Refunded Bonds"), refunding certain notes which previously refunded certain Bonds outstanding under the Trust Indenture (the "Refunded Notes"), paying the redemption premium on the Refunded Bonds, and paying a portion of the costs of issuance of the Series D/E Bonds. The Series D/E Bonds, the Single Family Mortgage Revenue Bonds (as defined herein), and, unless subordinated, all Bonds subsequently issued under the Trust Indenture are equally and ratably secured by the Trust Estate (as defined herein) held by the Trustee under the Trust Indenture. See "SECURITY FOR THE BONDS" and "SUMMARY OF THE TRUST INDENTURE."

**THE SERIES D/E BONDS ARE SUBJECT TO SPECIAL MANDATORY SINKING FUND AND OPTIONAL REDEMPTION ON THE DATES AND AT THE REDEMPTION PRICES, INCLUDING REDEMPTION AT PAR UNDER CERTAIN CIRCUMSTANCES, WHICH ARE MORE FULLY DESCRIBED HEREIN. See "THE SERIES D/E BONDS — Redemption Provisions."**

**THE SERIES D/E BONDS ARE LIMITED OBLIGATIONS OF THE DEPARTMENT AND ARE PAYABLE SOLELY FROM THE REVENUES AND FUNDS PLEDGED FOR THE PAYMENT THEREOF AS MORE FULLY DESCRIBED HEREIN. See "SECURITY FOR THE BONDS — Pledge Of Trust Indenture." NEITHER THE STATE NOR ANY AGENCY OF THE STATE, OTHER THAN THE DEPARTMENT, NOR THE UNITED STATES OF AMERICA OR ANY AGENCY, DEPARTMENT OR OTHER INSTRUMENTALITY THEREOF, INCLUDING GNMA, NOR FNMA, IS OBLIGATED TO PAY THE PRINCIPAL OR REDEMPTION PRICE OF OR INTEREST ON THE SERIES D/E BONDS. NEITHER THE FAITH AND CREDIT NOR THE TAXING POWER OF THE STATE OR THE UNITED STATES OF AMERICA IS PLEDGED. GIVEN OR LOANED TO SUCH PAYMENT. GNMA AND FNMA GUARANTEE ONLY THE PAYMENT OF THE PRINCIPAL OF AND INTEREST ON THE GNMA CERTIFICATES AND FNMA CERTIFICATES, RESPECTIVELY, WHEN DUE AND DO NOT GUARANTEE THE PAYMENT OF THE BONDS OR ANY OTHER OBLIGATIONS ISSUED BY THE DEPARTMENT. THE DEPARTMENT HAS NO TAXING POWER.**

*The Series D/E Bonds are offered when, as, and if issued by the Department and received by the Underwriters and an institutional investor. Delivery of the Series D/E Bonds is subject to approval of the legality thereof by Vinson & Elkins L.L.P. and Law Office-Sherman E. Stimley & Associates, Co-Bond Counsel, and by the Attorney General of the State of Texas and certain other conditions. Certain legal matters will be passed upon for the Department by its Counsel, McCall, Parkhurst & Horton L.L.P. Certain legal matters will be passed upon for the Underwriters by their co-counsel, Mayor, Day, Caldwell & Keeton, L.L.P. and Wickliff & Hall, P.C. It is expected that the Series D/E Bonds will be available for delivery to DTC in book-entry only form on or about November 14, 1996.*

Bear Stearns & Co. Inc.

George K. Baum & Company                                        Siebert Brandford Shank & Co. Inc.
                                                                  *A division of Muriel Siebert & Co. Inc.*

A.G. Edwards & Sons, Inc.                    First Southwest Company

Morgan Keegan & Company, Inc.   Southwestern Capital Markets, Inc.   Walton Johnson & Company

Dated October 24, 1996

NEW ISSUE
(Book-Entry Only)

*In the opinion of Bond Counsel, under existing statutes, regulations, rulings and court decisions, interest on the Series 1996-53A Bonds will not be includible in the gross income of the holders thereof for Federal income tax purposes on the assumption that the Agency complies with its covenants relating to certain requirements of the Internal Revenue Code of 1986, as amended. Interest on the Series 1996-53A Bonds will be a specific preference item for purposes of the Federal alternative minimum tax imposed on individuals and corporations and interest on any Series 1996-53A Bonds will be taken into account in determining the environmental tax imposed on corporations.*

*Interest on the Series 1996-53B Bonds is includible in the gross income of the holders thereof for federal income tax purposes.*

*Under the laws of the Commonwealth of Pennsylvania, as enacted and construed on the date hereof, the Series 1996-53 Bonds are exempt from Pennsylvania personal property taxes and interest on the Series 1996-53 Bonds is exempt from Pennsylvania personal income tax and Pennsylvania corporate net income tax. For a more complete discussion of Federal and Commonwealth of Pennsylvania tax issues, see "FEDERAL TAX MATTERS" and "STATE TAX MATTERS" herein.*

# $75,000,000
# PENNSYLVANIA HOUSING FINANCE AGENCY

## Single Family Mortgage Revenue Bonds, Series 1996-53
consisting of
### $60,000,000 Series 1996-53A Bonds (AMT)
### $15,000,000 Series 1996-53B Bonds (Federally Taxable)

Dated: October 1, 1996                   Due: April 1 and October 1 (as shown below)

The Series 1996-53 Bonds will bear interest from October 1 at the rates shown below payable on each April 1 and October 1 commencing April 1, 1997. The Series 1996-53 Bonds will mature on the dates and in the principal amounts shown below and will be subject to redemption prior to maturity as described herein.

The Series 1996-53 Bonds will be available only as fully registered bonds without coupons, and will be registered in the name of Cede & Co. as registered owner and nominee for The Depository Trust Company, New York, New York ("DTC"). Individual purchases will be made in book-entry form only, in denominations of $5,000 principal amount or any integral multiple thereof. See "BOOK-ENTRY ONLY SYSTEM" herein. Interest on the Series 1996-53 Bonds is payable by check mailed to the registered owner. The principal of and redemption premium, if any, on the Series 1996-53 Bonds is payable at the principal corporate trust office of Mellon Bank, N.A. (the "Trustee").

The Agency has no taxing power. Neither the Commonwealth of Pennsylvania nor any political subdivision thereof is or shall be obligated to pay the principal or redemption price of or interest on the Series 1996-53 Bonds and neither the faith and credit nor the taxing power of the Commonwealth or any political subdivision thereof is pledged to such payment.

## MATURITY SCHEDULE
### $11,355,000 Series 1996-53A Serial Bonds

| Maturity | Amount | Interest Rate | Maturity | Amount | Interest Rate |
|---|---|---|---|---|---|
| October 1, 1998 | $ 810,000 | 4.20% | October 1, 2004 | $1,065,000 | 5.10% |
| October 1, 1999 | 845,000 | 4.40 | October 1, 2005 | 1,120,000 | 5.20 |
| October 1, 2000 | 880,000 | 4.65 | October 1, 2006 | 1,180,000 | 5.35 |
| October 1, 2001 | 920,000 | 4.80 | October 1, 2007 | 1,245,000 | 5.45 |
| October 1, 2002 | 965,000 | 4.90 | October 1, 2008 | 1,310,000 | 5.55 |
| October 1, 2003 | 1,015,000 | 5.00 | | | |

$11,805,000 6.00% Series 1996-53A Term Bonds due October 1, 2015

$ 5,610,000 6.05% Series 1996-53A Term Bonds due April 1, 2018

$19,320,000 6.15% Series 1996-53A Term Bonds due October 1, 2024

$ 8,745,000 6.15% Series 1996-53A Term Bonds due April 1, 2027

$ 3,165,000 5.40% Series 1996-53A Term Bonds due October 1, 2027

$15,000,000 6.81% Series 1996-53B Term Bonds (Federally Taxable) due October 1, 2006

Price of all Bonds: 100%

(Plus Accrued Interest)

*The Series 1996-53 Bonds are offered when, as and if issued by the Agency subject to prior sale, withdrawal or modification of the offer without any notice and subject to receipt of the approving legal opinion of Blank Rome Comisky McCauley, Philadelphia, Pennsylvania, Bond Counsel, and subject to certain other conditions. The Series 1996-53A Bonds maturing April 1, 2027 (the "Placed Bonds") are being sold by the Agency pursuant to a private sale and will not be available for purchase or delivery by the Underwriters. The Series 1996-53 Bonds other than the Placed Bonds (the "Underwritten Bonds") are being offered by the Agency to the Underwriters. Legal matters will be passed upon for the Underwriters by their counsel, Richards & Associates, Erie, Pennsylvania. It is expected that the Series 1996-53 Bonds will be available for delivery in New York, New York on or about November 7, 1996.*

## PaineWebber Incorporated

Siebert Brandford Shank & Co. Inc.              NatCity Investments, Inc.
A division of Muriel Siebert & Co. Inc.

Dated: October 10, 1996

**321**

Stock & Bond Brokers
Acciones-Piedras

SHOCHET TRADING

**SHOCHET**
Securities, Inc.

Florida's Full-Service Discount Broker

The Real Yellow Pages®
www.yp.bellsouth.com

## Stock & Bond Brokers-
### (Cont'd)

### Acciones Y Bonos-
#### Corredores

BP Capital 8300 W Flagler St .............. 305 221-2500
Bratiford Brokerage
150 NW 168th St ...........................

BULL & BEAR SECURITIES INC
   Earn American Airlines
   AAdvantage Miles
   Every Time You Trade!
   Toll Free-Dial '1' & Then ....... 800 262-5800
CARDINAL CAPITAL MANAGEMENT INC .. 305 443-3888
   800 Douglas Rd CG ........................

CHARLES SCHWAB & CO INC   **Charles Schwab**
   • A WIDE
     RANGE OF
     INVEST-
     MENTS
   • 24-HOUR
     SERVICE,
     7 DAYS
     A WEEK

   SAVE ON QUALITY
   INVESTMENT SERVICES

   Member SIPC/NYSE

**CORAL GABLES**
Charles Schwab & Co Inc
   110 Merrick Way .....................
   Coral Gables Toll Free-Dial '1' & Then .... 800 435-4000

**MIAMI**
Charles Schwab & Co Inc ..................... 800 435-4000
   1000 Brickell Av Toll Free-Dial '1' &
   Then ...................................... 800 362-1774
Se Habla Español ............................ 305 371-2902
   ......................................... 305 371-7719
Court George .......... Inc
Cutler Securities
   1401 Brickell Av ..........................
Dean Witter Reynolds Inc
   See Morgan Stanley Dean Witter
Diversified Global Markets
   9600 NW 25th St ...........................
DREYFUS FINANCIAL CENTER ....... 800 499-3327
   Toll Free-Dial '1' & Then ................. 305 358-0778
Edward Jones Investments 1550 Madruga Av CG 305 377-2919

F T C London 1 Biscayne Blvd ...............

### FIDELITY INVESTMENTS

90 Alhambra Plaza Coral Gables
   Toll Free-Dial '1' & Then ........ 800 544-7558
4090 N Ocean Blvd ................. 800 544-7558
Ft Laud ........................... 800 544-7558
4400 N Federal Hwy ............... 800 544-7558
Boca Raton ....................... 800 544-7558
2401 PGA Blvd
Palm Beach Gardens ..............

FIRST EQUITY CORPORATION OF ..... 305 379-0731
   FLORIDA
   444 Brickell Av ........................... 305 893-8993
First Insurance Agency Inc C .............. 305 937-0460
   701 Miami Securities Inc 20840 W Dixie Hwy
First Miami Securities Inc ................. 305 670-2211
   9100 S Dadeland Blvd ...................... 305 379-4406
Florida Atlantic Securities Corp ........... 305 895-6675
   1221 Brickell Av ..........................
GKN Securities Inc ......................... 305 755-1000
   12000 Biscayne Blvd ....................... 305 374-3600

### GOLDMAN SACHS COMPANY
   200 S Biscayne Blvd Mia ...................

Gusman & Co 1200 Brickell Av .............. 305 524-1200
HAMAUER J B & CO ........................... 888 524-1500
   704 E Hallandale Beach Blvd Hlndl
   Toll Free-Dial '1' & Then ................. 305 271-1900
Herrfeld Thomas J Company Inc .............. 305 932-5880
   Herzog Heine & Geduld Inc ................. 305 937-1586
   19495 Biscayne Blvd
Herzog Heine & Geduld Inc ................. 305 571-1380
   9495 Biscayne Blvd
Howard Gagnon & Company
   3050 Biscayne Blvd ........................ 305 374-2229
I & M R Grand Banks Financial .............. 305 373-1105
   3050 Biscayne Blvd New Bank Rd ........... 305 864-0703
Investacorp Inc 15450 New Bank Rd ......... 305 573-1105
Investment St 1110 Brickell Av ............. 305 864-0703
Investors St 5225 Collins Av MB ........... 305 865-6976
   J Morton Smith & Co
   J Morton Smith & Co
JOSEPHTHALL & CO ........................... 305 325-0499
   1100 E Hallandale Beach Blvd Hlndl
   Miami Tel No-.............................

## JW Genesis SECURITIES INC

### JWGenesis
FINANCIAL

   • FULL SERVICE
   • MUNICIPAL BONDS
   • RESEARCH
   • INCOME INVESTMENTS
   • RETIREMENT PLANS
   • MUTUAL FUNDS
   • ASSET MANAGEMENT
     MEMBER NYSE
     www.jwgenesis.com

**AVENTURA**
JW GENESIS SECURITIES INC
   20801 Biscayne Blvd Aventura ..... 305 792-0274
**CORAL GABLES**
JW GENESIS MERRICK WAY CG ... 305 447-0711
   45 MERRICK WAY CG
**DOWNTOWN MIAMI**
JW GENESIS SECURITIES INC .......... 305 961-2160
   1221 Brickell Av ..........................

Kramer Securities Corp .............. 305 667-9902
Lehman Brothers 1221 Brickell Av .... 305 789-8700
Miramar Securities Inc 1 Alhambra Plz CG 305 476-0064

## MORGAN STANLEY DEAN WITTER
### MORGAN STANLEY DEAN WITTER
   Coral Gables Office ................. 305 447-4000
   241 Sevilla Av CG
   Aventura Office 19495 Biscayne Blvd .. 305 937-7100

Miami Office ........................... 305 347-6700
   801 Brickell Av .................... 305 671-8100
   9100 S Dadeland Blvd ............... 305 604-5220
   777 Arthur Godfrey Rd MB ...........

## MURIEL SIEBERT & CO
### Discounted Commissions
   Tax Free & Taxable Investments
   • Mutual Funds
   Internet Services Available
   Our Website - www.siebertnet.com
   Member Nyse & Sipc
   $100 Million Account Protection
   Established 1967
### Siebert
   Muriel Siebert & Co, Inc
   Miami Av Surfside ................. 305 868-0222
9569 Harding Av Surfside .......... 800 773-2980
Toll Free-Dial '1' & Then ......... 800 728-3352
   Boca Raton ..................... 800 293-3493
Naples Beach .................... 800 908-4503
   Palm Beach ..................... 800 872-0711
New York ......................

Olde Discount Stockbrokers
   2374 W Federal Hwy Ft Lauderdale .... 800 432-4833
   Toll Free-Dial '1' & Then ........... 305 932-1929
   ( Please See Our Display Ad Previous Page )

## PaineWebber
   For advice that's
   customized to
   your investment
   goals.
   You'll say,
   "Thank you PaineWebber"®
   **"FOR INFORMATION CALL"**
   PaineWebber ................... 305 536-9200
   190 SE 2nd St Mia ............ 305 933-9987
   20803 Biscayne Blvd .......... 305 441-9991
   Or Toll Free-Dial '1' & Then . 305 448-5444
   550 Biltmore Way ............

## PRUDENTIAL SECURITIES
   **Prudential Securities**

SERVING ALL YOUR FINANCIAL NEEDS
   • Stocks, Bonds, Commodities, Options
   • Tax-Advantaged Investments
   • Mutual Funds, IRA's, Keoghs

   **"FOR INFORMATION CALL"**
   MIAMI
Prudential Securities Incorporated
   Southeast Financial Ctr ..... 305 372-7000
   200 S Biscayne Blvd ......... 305 670-4000
   9100 S Dadeland Blvd
NORTH MIAMI BEACH
Prudential Securities Incorporated
   19495 Biscayne Blvd N Miami Bch 305 935-3800
   CORAL GABLES
Prudential Securities Incorporated
   2800 Ponce De Leon Blvd ..... 305 447-1353
   HOLLYWOOD
Prudential Securities Incorporated
   4000 Hollywood Blvd
      Miami Tel No-305 621-1234

## QUICK & REILLY INC   QUICK &
   **REILLY**
   • Major Commission
     Savings!
   • Stocks, Bonds
     Mutual Funds
   • No Rollovers
   • IRA's, Keoghs
   • 24 hour access
     Internet & Touch-Tone Trading
   • Over 115 Locations Nationwide

   **"FOR INFORMATION CALL"**
   INVESTOR CENTERS

   MIAMI
   Quick & Reilly Inc ........... 305 358-6128
   444 Brickell Av
   FORT LAUDERDALE
   Quick & Reilly Inc
   2140 E Oakland Park Blvd ..... 954 566-5990
   DAVIE
   Quick & Reilly Inc 2471 S University Dr .. 954 472-9600

## RAYMOND JAMES & ASSOCIATES INC
   Member NYSE / SIPC
   Investment & Financial Planning
   STOCKS • IRA's • MUTUAL FUNDS
   Govt., Corp., Municipal Bonds

   Coral Gables Branch ............ 305 461-1200
   2 Alhambra Plz CG
Raymond James Financial Services ..... 305 860-6511
   1300 SW 22nd St .............. 305 865-5185
Rogers Ball 1386 N Bay Cswy N Bay Vlg

## SALMON SMITH BARNEY   **SALOMON SMITH BARNEY**

   COMPLETE
   FINANCIAL PLANNING
   AND INVESTMENT
   SERVICES

   **"FOR INFORMATION CALL"**
   CORAL GABLES
   Salomon Smith Barney Inc ...... 305 460-7800
   220 Alhambra Cir CG
   MIAMI
   Salomon Smith Barney Inc ...... 305 379-1000
   701 Brickell Av .............. 305 358-7750
   1 SE 3rd Av
   MIAMI BEACH
   Salomon Smith Barney Inc
   300 Arthur Godfrey Rd MB ..... 305 672-5900
   NO MIAMI BEACH
   Salomon Smith Barney Inc ...... 305 932-4250
   20901 Biscayne Blvd
   HALLANDALE
   Salomon Smith Barney Inc
   1005 E Hallandale Beach Blvd Hlndl 800 331-1911
   Toll Free-Dial '1' & Then

Schild Asset Management ......... 305 377-1526
   9350 S 34th Av
Scottsdale Securities Inc ........ 305 864-6700
   1110 Brickell Av
   ( Please See Our Display Ad Previous Page )
Shares Inc 1111 Kane Conc Bay Hbr .. 305 864-6700
Sharp Financial Services Inc Cd Division 305 373-3585
   1000 Brickell Av ............

### SHOCHET TRADING
   2 Biscayne Blvd ................ 305 577-4442

   **MIAMI BEACH**
SHOCHET SECURITIES INC ......... 305 534-5111
   519 Arthur Godfrey Rd MB

   **SOUTH MIAMI**
SHOCHET SECURITIES INC ......... 305 666-3361
   9515 S Dixie Hwy

   **DELRAY BEACH**
SHOCHET SECURITIES INC ......... 561 749-1000
   1529 W Atlantic Av Delray Beach
   .............................. 305 577-4442
Shochet Trading 2 Biscayne Blvd .... 305 670-2228
Solowey & Dixie ................. 305 933-0225
   Spencer-Winston Securities Corp
   5520 Mystic Pointe Drive ....... 305 270-2550
Stockbroker 5 SW 113th St ........ 305 377-8625
Strauss Bernard .................. 305 558-7744
   3505 Miami Lakeway N ...........
South America Securities Inc .....

## SUNTRUST SECURITIES INC ........ 305 579-7331
   777 Brickell Av
   The Trading Room 388 Merrick Way CG . 305 448-9786
   .............................. 305 266-3172
Wallstreet Electronica ........... 305 577-6000
   Watermouse Securities
Watermouse Securities Corporation . 305 949-1700
   Westminster Securities Corporation 305 670-3091
   5550 NE Miami Gardens Dr
Wesser HG Inc 9350 S Dixie Hwy ... 305 448-5490
Wolf Peter ...................... 305 448-5490
   1300 Wilshire Blvd Los Angeles Ca
      Miami Tel No-305 448-5490

## YOUNG STOVALL & CO INC ........ 305 666-2511
   Visit Our Web Site @
   www.youngstovall.com
   8427 S Dixie Hwy
   ( Please See Our Display Ad Previous Page )

YOUR DISCOUNT BROKER ........... 305 933-1155
   18949 Biscayne Blvd
   ( Please See Our Display Ad Previous Page )

---

## Stock Certificates
### Acciones-Certificados

ACE INDUSTRIES INC
   Stock Certificates • Bonds
   Debentures • Corporate Form
   Corporate Kits; Seals & Serv
   35 Years In Downtown Mia
   .............................. 305 358-
   54 NW 11th St ................. 305 358-
   Fax .......................... 305 358-

EMPIRE CORPORATE KIT OF AMERICA
   STOCK CERTIFICATES
   KITS MADE SAME DAY
   1492 W Flagler St ............. 305

---

## Stockings-Elasti
### Medias Elásti
   *( See Elastic Stockings )*

---

## Stone & Brick-S
### Piedras Y La-
   Simulac

ALL STONE
   3500 NW 50th St ...............
   *( Classification cont )*

MULTI M—MY                    AREA CODES 305 & 786          MIAMI BUSINESS                                                    278        279

MUNOZ STUDIO

6055 SW 8th St .......................... **305 261-7777**

MUNOZ STUDIO

1534 W Flagler St Mia .................. **305 325-8523**

MURRAY'S SPEED & CUSTOM ............... **305 687-7297**

MURTON ROOFING CORP ................... **305 592-5385**

MUSCULAR DYSTROPHY ASSOCIATION ........ **954 970-9696**

MUSEUM OF SCIENCE & SPACE TRANSIT PLANETARIUM—
MUSEUM INFO & ADMIN ................... **305 854-4242**
PLANETARIUM INFO & ADMIN .............. **305 854-4247**
SHOW-TIMES & COSMIC HOTLINE ........... **305 854-2222**

MURPHY JAMES W INTERIORS INC .......... **305 646-1984**

MURPHY'S TRUCK REBUILDING SERVICE ..... **305 573-1974**

MY GARAGIC INC ........................ **305 266-6665**
Continued on Next Page

**EXHIBIT**

C

AREA CODE 305 MIAMI BUSINESS

356

SHOCHEN SECURITIES INC
9515 S DIXIE HWY .......... 305 666-3361
519 ARTHUR GODFREY RD MB .......... 305 534-5111

SHOPS AT SUNSET PLACE

SHORENSTEIN REALTY SERVICES LP

SHOWROOM 84 INC .......... 305 573-5114

SHULA'S ATHLETIC CLUB
15150 BULL RUN ROAD .......... 305 820-8025

OOK JOSEPH S atty .......... 305 446-4177

SHUTTS & BOWEN LP .......... 305 358-6300

SID HERSH ASSOCIATES INC .......... 305 625-5555

SICKLE WELL DRILLING .......... 305 258-1578

SIDDIQ KHAN & ASSOCIATES INC engrs

SIEGAL MEDICAL GROUP PA
10661 SW 88TH ST MIA .......... 305 595-6113

SIEGAL SANFORD DO
10661 SW 88TH ST .......... 305 595-6113

SIEGAL ANIMAL CLINIC .......... 305 891-5116

SIEGFRIED RIVERA LERNER DE LA TORRE & SOBEL PA .......... 305 442-3334

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

M Securities Investments, Inc.
d/b/a Howard Gary & Co.

**DEFENDANTS**

Calvin B Grigsby, et al

## 02 - 21906

MAGISTRATE JUDGE
SIMONTON -

**CIV - LENARD**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Dade/02cv 21906 (Lenard). Simonton

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard J Burton Esq.
18305 Biscayne Blvd #300
Miami, FL 33160

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

18 USC 1961 - Conspiracy by Defendants to defraud Plaintiff & Other Cants

IVa. __21__ days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| A CONTRACT | TORTS | | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | B ☐ 371 Truth in Lending | ☐ 690 Other | **B SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | B ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| B ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | **A FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | B ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☒ 540 Mandamus & Other | | | ☒ 890 Other Statutory Actions |
| B ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | *A or B |
| | | *A or B | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☒ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ 10,800,00

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
M Securities v Grigsby, Miami Dade County   JUDGE Lenard   DOCKET NUMBER 00-1951 Civ Lenard

DATE 6/24/02    SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F I-2
DPV 6/90

FOR OFFICE USE ONLY:  Receipt No. 865096   Amount: 150.00

Date Paid: 06/26/02   Mifp: